ORIGINAL

# In the United States Court of Federal Claims

FILED
MAR 2 0 2018
U.S. COURT OF FEDERAL CLAIMS

No. 17-1088C
(Filed: March 20, 2018)

| | |
|---|---|
| LUIS ANGEL QUESADA, Plaintiff, v. THE UNITED STATES, Defendant. | Military Disability Retirement Pay, 10 U.S.C. § 1201; Military Retirement Pay, 10 U.S.C. §§ 1176, 3914, 3929, 3991; Physical Disability Review Board, 10 U.S.C. § 1554a; RCFC 12(b)(1); Money-Mandating Statutes; Statute of Limitations, 28 U.S.C. § 2501; Claim Accrual; Physical Evaluation Board; Discharge Date; Effect of Correction Board Proceedings |

Luis A. Quesada, March Air Reserve Base, CA, pro se.

Margaret J. Jantzen, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Judge

Plaintiff Luis A. Quesada, proceeding pro se and applying to proceed in forma pauperis, was separated from the United States Army ("Army") with disability severance pay in 1993 after honorably serving his country for nearly eighteen years. He contends, however, that the Army should have retired him for disability, and therefore seeks disability retirement pay and benefits dating back to his discharge date pursuant to 10 U.S.C. § 1201.[1] Defendant moves to dismiss plaintiff's complaint as barred by the statute of limitations. For the reasons set forth below, the court grants plaintiff's application to proceed in forma pauperis, grants defendant's motion to dismiss, and dismisses plaintiff's complaint as time-barred.

[1] Unless otherwise noted, all references and citations to title 10 of the United States Code are to the provisions in effect at the time of plaintiff's separation from the Army.

7016 3010 0000 4308 4508

# I. BACKGROUND

## A. Plaintiff's Military Service

Plaintiff entered active duty service in the Army on March 2, 1976.[2] He was assigned to the Army Medical Corps Command, and served as a medical specialist, ultimately attaining the rank of staff sergeant on July 1, 1983. During his first fifteen years of service, plaintiff served both in the United States and abroad.

In 1991, plaintiff was assigned to Fort Monmouth, New Jersey. In April 1992, he began to experience neck and lower back pain. X-rays revealed mild scoliosis of the cervical and thoracic spine, and a suggestion of spondylolysis of the L5 vertebra in the lumbar spine, but no other significant bony abnormality. He began a course of conservative treatment, including physical therapy, traction, and exercise. Unfortunately, he saw no improvement in his condition. Thus, in January 1993, plaintiff had MRIs taken of his cervical spine and thoracic spine. The MRI of his cervical spine revealed herniated disks between the C4 and C5 vertebrae and between the C5 and C6 vertebrae, as well as ridging between the C6 and C7 vertebrae, all of which were compressing the adjacent cervical cord. The MRI of his thoracic spine revealed a probable small herniated disk between the L4 and L5 vertebrae.

While he was stationed at Fort Monmouth, plaintiff volunteered for an assignment in South Korea. However, due to plaintiff's back pain, a physician at Walter Reed Army Medical Center completed a Physical Profile form for plaintiff on February 12, 1993, indicating that plaintiff's physical activities should be limited for three months, and recommending–if possible–that plaintiff not be deployed to South Korea for six months to allow him to continue his rehabilitation. The same physician prepared a similar Physical Profile form on February 22, 1993, indicating that plaintiff's physical activities should be limited for six months.[3] However, on March 4, 1993, a physician at Fort Monmouth prepared a new Physical Profile form indicating that plaintiff's physical activities should only be limited until April 15, 1993; plaintiff's then-upcoming deployment to South Korea was not mentioned.

In fact, plaintiff was deployed to South Korea in April 1993. After arriving in Seoul, he was transported via truck to Camp Casey. On April 20, 1993, plaintiff underwent a medical evaluation, and was diagnosed with chronic lower back pain, chronic cervical pain, and subjective radicular symptoms in his upper and lower extremities. It was recommended that

---

[2] The court derives the background from plaintiff's complaint; the addendum to plaintiff's complaint; and the exhibits attached to plaintiff's complaint, defendant's motion to dismiss, and plaintiff's response to defendant's motion to dismiss.

[3] The change in the duration of the restriction on physical activities appears to be the only difference between the two forms prepared by the physician at Walter Reed Army Medical Center.

plaintiff be returned to the United States for an administrative determination of his fitness for duty. Thirty days after plaintiff arrived in South Korea, he was transported back to the United States to an Army hospital of his choosing–Fitzsimmons Army Medical Center ("FAMC") in Aurora, Colorado.

After he arrived at FAMC, plaintiff was evaluated at the orthopedic clinic on May 8, 1993, and his orthopedist, Bert C. Callahan, M.D., assessed him with mechanical lower back pain. Dr. Callahan determined that plaintiff would undergo physical therapy and then, after ninety days, be reevaluated to determine the need for a Medical Evaluation Board ("MEB").[4] Later that month, Dr. Callahan prepared a Physical Profile form indicating that plaintiff's physical activities should be limited until August 15, 1993, and certified that plaintiff would require hospitalization for more than three months.

Dr. Callahan evaluated plaintiff again on June 7, 1993. Despite his earlier intent to reevaluate plaintiff in August 1993 to determine the need for an MEB, Dr. Callahan's record of the June 7, 1993 visit includes the following notation: "Would like to start MEB. Will obtain bone scan & start MEB." In fact, Dr. Callahan dictated the MEB report on July 15, 1993. In the report, Dr. Callahan provided the history of plaintiff's condition, reviewed all of plaintiff's systems, and described the results of his physical examination of plaintiff. In addition, Dr. Callahan described the results of plaintiff's x-rays, MRIs, and laboratory tests. Dr. Callahan also noted plaintiff's then-present status, remarking that notwithstanding plaintiff's dedication to his rehabilitation program, plaintiff remained "quite limited by his back pain . . . ." Ultimately, Dr. Callahan recorded diagnoses of chronic mechanical lower back pain and seasonal allergies, and recommended that plaintiff be presented to a Physical Evaluation Board ("PEB") for an administrative disposition.[5]

The PEB convened on October 15, 1993. In the report of its proceedings, the PEB described plaintiff's disability as "[c]hronic mechanical low back pain with normal x-rays with right sided L4/L5 herniated [disk] without radiculopathy or radiculitis but with characteristic pain on motion," and assigned a rating of 10% for this disability. The PEB concluded that plaintiff's disability rendered plaintiff unfit to perform the duties of a medical noncommissioned officer.

---

[4] An MEB is "convened to document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status," and "[a] decision is made as to the Soldier's medical qualification for retention . . . ." Army Regulation 635-40, "Physical Evaluation for Retention, Retirement, or Separation" ("Army Regulation 635-40"), ¶ 4-10 (Aug. 15, 1990).

[5] If an MEB "determines that the Soldier does not meet retention standards, [it] will recommend referral of the soldier to a PEB." Army Regulation 635-40, ¶ 4-10; accord id. ¶ 4-13. PEBs "evaluate all cases of physical disability equitably for the Soldier and the Army." Id. ¶ 4-17. They determine, among other things, "[w]hether the Soldier is physically fit or unfit to perform the duties of the Soldier's office, grade, rank, or rating," and "[w]hether the disability meets the criteria established by law for compensation." Id. ¶ 4-19(a).

Because plaintiff's disability rating was less than 30% and plaintiff had less than twenty years of service,[6] the PEB recommended that plaintiff be separated from the Army with disability severance pay.

On October 18, 1993, plaintiff acknowledged that he had been fully apprised of the PEB's findings and recommendations, as well as his rights pertaining to those findings and recommendations, and indicated that he concurred with the PEB's report and waived a formal hearing of his case. Moreover, the counselor assigned to assist plaintiff declared that she had explained to plaintiff both the PEB's findings and recommendations, and his rights pertaining to those findings and recommendations.

In accordance with the PEB's recommendation, plaintiff was separated from the Army with disability severance pay on November 15, 1993. Plaintiff was honorably discharged; indeed, plaintiff received numerous commendations throughout his Army career.

**B. Plaintiff's Prior Attempts to Obtain Relief**

On August 10, 1995, plaintiff submitted an application for the correction of his military records to the Army Board for Correction of Military Records ("ABCMR"), requesting that his separation from the Army be converted to a disability retirement, entitling him to disability retirement pay. He contended that he did not have the medical evidence he needed at the time of his separation to establish that he should have been retired for disability. He also contended that at the time of his separation, the Army was engaged in a reduction of force, and he was qualified to retire due to his time in service.[7]

The ABCMR obtained an advisory opinion from the Army Physical Disability Agency. The Agency first remarked that it had no objection to plaintiff being retired under the military's early retirement authority if plaintiff so qualified. The Agency then concluded that plaintiff had not offered any medical evidence establishing that the PEB's findings were erroneous, that the higher disability ratings assigned by the United States Department of Veterans Affairs ("VA")

---

[6] At the time of the PEB, plaintiff had served in the Army for more than seventeen-and-one-half years.

[7] The Temporary Early Retirement Authority provision of the National Defense Authorization Act for Fiscal Year 1993 amended 10 U.S.C. § 3914 to grant the Army the discretion to allow enlisted members to request retirement if, between October 23, 1992, and October 1, 1995, they had more that fifteen, but less than twenty, years of service. See Pub. L. No. 102-484, § 4403, 106 Stat. 2315, 2702-04 (1992) (codified in relevant part at 10 U.S.C. § 3914 note). The provision also granted the Army the authority to "prescribe regulations and policies regarding the criteria for eligibility for early retirement . . . and for the approval of applications for such retirement." Id. § 4403(d).

after plaintiff's separation from the Army did not indicate that the PEB's findings were erroneous,[8] and that the PEB's findings were not, in fact, erroneous.

The ABCMR denied plaintiff's application on February 27, 1997. It determined that plaintiff was not eligible for early retirement,[9] that the PEB's findings were proper, and that the disability ratings assigned by the VA had no bearing on the propriety of the PEB's findings. Consequently, the ABCMR concluded that plaintiff had not provided sufficient evidence of a probable error or injustice.

Plaintiff submitted another application to the ABCMR on April 13, 2010, again requesting that his separation from the Army be converted to a disability retirement, entitling him to disability retirement pay. He contended that the PEB should have assigned him a 30% rating, that the PEB did not consider either his existing cervical damage or the fact that one of his legs was shorter than the other.[10] He further contended that due to his disability, he had been unable to review his medical records at the time of his separation, and that, in any event, his entire medical record was not available to him.

As reflected in an October 7, 2010 letter addressed to plaintiff, the Army Review Boards Agency treated plaintiff's new application as a request for reconsideration of the ABCMR's February 27, 1997 decision. The Agency advised plaintiff that Army regulations allow an applicant to request reconsideration of an ABCMR decision if the request is received within one year of the original decision and the applicant has not previously requested reconsideration. It further explained that because plaintiff did not submit his request for reconsideration within one year of the ABCMR's February 27, 1997 decision, the ABCMR was returning the application to plaintiff without taking further action. Finally, the Agency cautioned plaintiff that the ABCMR would not entertain any further requests for reconsideration, and advised plaintiff that he had "the option to seek relief in a court of appropriate jurisdiction."

Rather than filing suit, plaintiff pursued his request for relief by contacting his congressional representative, who forwarded plaintiff's inquiry to the Army. On December 17, 2014, the Army Human Resource Service Center advised the congressman that plaintiff was not entitled to disability retirement pay and that plaintiff had previously, and unsuccessfully, petitioned the ABCMR to obtain such pay. The Center further advised the congressman that

---

[8] The VA assigned plaintiff a 20% rating for his back pain on August 1, 1994, and increased that rating to 70% effective February 22, 1995.

[9] According to the ABCMR, the Army limited eligibility for early retirement to soldiers serving in certain identified specialties who would depart active duty service by August 31, 1993.

[10] The difference in leg lengths was noted during a May 20, 1992 orthopedic consultation and the April 20, 1993 medical evaluation performed in South Korea.

plaintiff could "reapply by submitting new, substantial, and relevant evidence not previously considered by the Board." The congressman forwarded this response to plaintiff on December 22, 2014.

Approximately three months later, on March 12, 2015, plaintiff submitted a third application to the ABCMR in which he indicated that there was new evidence not previously considered by the ABCMR, including evidence of his mental health.[11] The Army Review Boards Agency acknowledged receipt of plaintiff's application in letters dated April 3, 2015, and October 21, 2015. Ultimately, however, on February 1, 2016, the ABCMR returned the application to plaintiff as an untimely request for reconsideration, again advising him that he had "the option to seek relief in a court of appropriate jurisdiction."

### C. Plaintiff's Suit in This Court

Plaintiff filed a complaint in this court on August 10, 2017, along with an application to proceed in forma pauperis. In his complaint, plaintiff asserts that he was "unjustly and erroneously discharged" from the Army with disability severance pay, and instead should have been retired with disability retirement pay pursuant to 10 U.S.C. § 1201. In support of his claim, plaintiff alleges that he did not receive proper medical care while he was stationed at Fort Monmouth between 1991 and 1993, and that one of his superior officers purposely sought to harm his career by damaging him physically and causing him mental anguish. He further contends that the Army was negligent in sending him to South Korea because his physician at Walter Reed Army Medical Center directed that his physical activities be limited for six months and because his physical condition rendered him undeployable. Plaintiff also asserts that his deployment to South Korea caused him additional physical damage–particularly as a result of the truck ride to Camp Casey–and mental anguish.

Then, after the PEB issued its report, plaintiff alleges, he was not provided the opportunity to appeal the PEB's findings and recommendations without new medical evidence, which he could not obtain due to his weakened medical condition and his unfamiliarity with the proper procedures. Plaintiff also criticizes the Army for failing to provide him with legal counsel to assist him throughout the MEB and PEB proceedings, or with a psychiatric evaluation prior to his separation. In addition, plaintiff contends that the Army lied to him when it advised him that his severance pay was compensation for his service because the VA has been recouping the severance pay on a monthly basis from his disability payments.[12] In fact, plaintiff asserts, because Camp Casey is located near the Korean Demilitarized Zone, he should have received

---

[11] Plaintiff sought a mental health evaluation from the VA in 2015, and was provisionally diagnosed with posttraumatic stress disorder.

[12] "The amount of disability severance pay received" by a former service member "shall be deducted from any compensation for the same disability to which the former member . . . become[s] entitled under any law administered by the [VA]." 10 U.S.C. § 1212(c).

combat pay, his severance pay should not be recouped from his VA disability payments, and he should not be required to pay income taxes.

Ultimately, plaintiff requests that the court direct the Army to retroactively increase his disability rating to 50% and provide him with disability retirement pay and benefits retroactive to his discharge date.[13]

On November 8, 2017, defendant moved to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Specifically, defendant contends that plaintiff's claim for disability retirement pay and benefits is barred by the six-year limitations period set forth in 28 U.S.C. § 2501.[14] In his response, filed on November 27, 2017, plaintiff argues that the court possesses jurisdiction to entertain his complaint because 10 U.S.C. § 1201 is a money-mandating statute and because the ABCMR issued its most recent decision less than six years before he filed suit. Plaintiff further suggests that he is entitled to a disability retirement pursuant to the 2008 law that created the Physical Disability Board of Review ("PDBR"), see 10 U.S.C. § 1554a (2012), and that his length of active duty service–seventeen years, eight months, and fifteen days–qualified him to be retained on active duty until he was eligible for retirement, see 10 U.S.C. § 1176. Defendant filed a reply in support of its motion to dismiss on December 14, 2017, maintaining its position that this court lacks jurisdiction to entertain plaintiff's complaint. Briefing is now complete, and the court deems oral argument unnecessary.

---

[13] Notwithstanding plaintiff's allegations that the Army provided inadequate medical care and caused him physical harm and mental anguish, plaintiff clarified in his response to defendant's motion to dismiss that he was not alleging any tort claims or seeking punitive damages.

[14] Defendant also contends that the United States Court of Federal Claims ("Court of Federal Claims") lacks jurisdiction to entertain allegations of physical and mental harm, which sound in tort, or to award punitive damages. Defendant is correct. See 28 U.S.C. § 1491(a)(1) (2012) (excluding claims sounding in tort from the jurisdiction of the Court of Federal Claims); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998) ("To the extent that . . . allegations sound in tort, the Court of Federal Claims lacks jurisdiction under the Tucker Act . . . ."); Garner v. United States, 230 Ct. Cl. 941 (1982) ("[T]he granting of . . . punitive damages [is] not within the jurisdiction of this court. Similarly, relief for mental distress and psychological damage is founded in tort, which is also outside of the jurisdiction of this court." (citations omitted)); Curry v. United States, 609 F.2d 980, 983 (Ct. Cl. 1979) (declaring the torts of emotional distress and anguish as outside of the court's jurisdiction). However, plaintiff clarified in his response to defendant's motion to dismiss that he was not alleging any tort claims or seeking punitive damages. See supra note 13.

## II. DISCUSSION

### A. Standard of Review

When considering whether to dismiss a complaint for lack of jurisdiction pursuant to RCFC 12(b)(1), a court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, plaintiffs proceeding pro se are not excused from meeting basic jurisdictional requirements, Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995), even though the court holds their complaints to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520-21 (1972). In other words, a plaintiff proceeding pro se must prove, by a preponderance of the evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Trusted Integration, Inc., 659 F.3d at 1163. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B. Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). In addition, to fall

within the jurisdiction of the Court of Federal Claims, any claim against the United States filed in the court must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501; see also John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008) (providing that the limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a claim).

### C. Plaintiff Has Alleged Claims Arising Under Money-Mandating Statutes

In his complaint, plaintiff claims entitlement to disability retirement pay and benefits pursuant to 10 U.S.C. § 1201. He also suggests, in his response to defendant's motion to dismiss, that he should have been retained on active duty until he was eligible for retirement pursuant to 10 U.S.C. § 1176, which provides that a soldier

> who is selected to be involuntarily separated, . . . and who on the date on which the member is to be discharged is within two years of qualifying for retirement under [10 U.S.C. § 3914] . . . , shall be retained on active duty until the [soldier] is qualified for retirement . . . , unless the [soldier] is sooner retired or discharged under any other provision of law.

There is no dispute that 10 U.S.C. § 1201 is a money-mandating statute. See Fisher v. United States, 402 F.3d 1167, 1174-75 (Fed. Cir. 2005) (panel portion). Further, plaintiff's suggestion that he should have been retained on active duty until he was eligible for retirement is, in essence, a claim for military retirement pay, and statutes authorizing retirement pay–such as 10 U.S.C. §§ 3929, 3991–are money-mandating. See Lewis v. United States, 458 F.3d 1372, 1376 n.2 (Fed. Cir. 2006) (citing statutes relating to the retirement pay of officers of the United States Navy and the United States Marine Corps that are analogous to the Army's retirement pay statues); Piotrowski v. United States, No. 13-760C, 2014 WL 7476033, at *8-9 (Fed. Cl. Dec. 30, 2014) ("[T]he court finds that the Army retirement pay statutes are money-mandating and serve as a basis for this court's jurisdiction over plaintiff's retirement pay claim."), aff'd, No. 2015-5098, 2018 WL 388488 (Fed. Cir. Jan. 12, 2018) (unpublished per curiam decision).

In contrast, the statute creating the PDBR, 10 U.S.C. § 1554a, is not a money-mandating source of jurisdiction. Created by Congress in January 2008, the PDBR is charged with reviewing the findings and decisions of PEBs for former service members who were medically separated from service between September 11, 2001, and December 31, 2009, with a disability rating of 20% or less. 10 U.S.C. § 1554a(a)-(b). Upon such a review, the PDBR may make the following recommendations to the Secretary of the pertinent military department:

> (1) No recharacterization of the separation of such individual or modification of the disability rating previously assigned such individual.
>
> (2) The recharacterization of the separation of such individual to retirement for disability.

(3) The modification of the disability rating previously assigned such individual by the Physical Evaluation Board concerned, which modified disability rating may not be a reduction of the disability rating previously assigned such individual by that Physical Evaluation Board.

(4) The issuance of a new disability rating for such individual.

Id. § 1554a(d). The relevant Secretary is authorized to correct the military records of the former service member in accordance with the PDBR's recommendation, id. § 1554a(e)(1), and such a correction may entitle the service member to additional pay and benefits, id. § 1554a(e)(2). However, the source of the right to that pay is not 10 U.S.C. § 1554a, but instead is another statute, such as 10 U.S.C. § 1201. See Martinez v. United States, 333 F.3d 1295, 1315 (Fed. Cir. 2003) (en banc) (holding that the statute governing the military correction boards, 10 U.S.C. § 1552, "is 'money-mandating' in the sense that it requires that the government grant monetary relief to a service member if the correction board determines that the service member's record should be corrected in a way that entitles the service member to back pay," but is not itself "the source of the right to back pay"). Thus, the court lacks jurisdiction to entertain any claim by plaintiff that 10 U.S.C. § 1554a offers him relief.[15]

### D. Plaintiff's Claims Are Barred by the Statute of Limitations

Although plaintiff has asserted claims under money-mandating statutes, those claims must be timely filed for the court to exercise its jurisdiction to rule upon their merits. Pursuant to 28 U.S.C. § 2501, a claim is timely if it is "filed within six years after such claim first accrues." "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)).

#### 1. Plaintiff's Claim for Disability Retirement Pay and Benefits

The United States Court of Appeals for the Federal Circuit has succinctly summarized the rules for determining when a claim for disability retirement pay and benefits accrues:

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. If at the time of discharge an appropriate board was requested by the service member and the

[15] The court also notes that plaintiff is not eligible to have his case heard by the PDBR because he was medically separated from service before September 11, 2001.

> request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board.

Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citations omitted); accord Chambers v. United States, 417 F.3d 1218, 1221, 1224-25, 1227 (Fed. Cir. 2005); Martinez, 333 F.3d at 1311-15. Statutorily authorized military boards whose decisions can trigger the running of the six-year limitations period include PEBs and the ABCMR. Chambers, 417 F.3d at 1225 & n.2.

In this case, a PEB was convened to consider plaintiff's fitness for duty, and it ultimately determined–in October 1993–that plaintiff should be separated, and not retired, due to his disabling lower back pain. Thus, pursuant to precedent binding on this court, plaintiff's claim for disability retirement pay and benefits accrued on the date of his discharge–November 15, 1993. This accrual date, moreover, is not affected by plaintiff's subsequent applications to the ABCMR for disability retirement pay and benefits or by the ABCMR's denial or rejection of those applications. In short, because plaintiff did not file suit in this court within six years of his separation from the Army, his claim for disability retirement pay and benefits is barred by 28 U.S.C. § 2501.

### 2. Plaintiff's Suggested Claim for Retirement Pay

Plaintiff's suggestion that he should have been retained on active duty until he was eligible for retirement fares no better under 28 U.S.C. § 2501. In essence, plaintiff is asserting a claim for back retirement pay premised on an allegation that he was improperly discharged from the Army. Such claims accrue on the date of discharge. See Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("[A]n involuntarily discharged or mandatorily retired officer must bring his or her Tucker Act action in the Court of Federal Claims within six years of the date of discharge or retirement."); Martinez, 333 F.3d at 1303-04 ("In a military discharge case, this court and the Court of Claims have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge. . . . If the plaintiff does not file suit within the six-year limitation period prescribed in 28 U.S.C. § 2501, the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge."), 1313 ("The cause of action in [the plaintiff's] Tucker Act suit was for the denial of money; that cause of action therefore accrued when he was separated from active duty and his monetary injury began."). Plaintiff was discharged from the Army on November 15, 1993. Because plaintiff filed suit more than six years after his discharge, his claim for retirement pay is time-barred.

## III. APPLICATION TO PROCEED IN FORMA PAUPERIS

As previously noted, plaintiff filed, concurrent with his complaint, an application to proceed in forma pauperis. Pursuant to 28 U.S.C. § 1915, the Court of Federal Claims may

waive filing fees and security under certain circumstances. See 28 U.S.C. § 1915(a)(1); see also Hayes v. United States, 71 Fed. Cl. 366, 366-67 (2006) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that lists all of their assets, declares that they are unable to pay the fees or give the security, and states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Here, plaintiff has satisfied all three requirements. Accordingly, the court grants plaintiff's application and waives his filing fee.

## IV. CONCLUSION

There is no dispute that plaintiff conducted himself honorably and with distinction in the Army for almost eighteen years until his lower back pain and other ailments prevented him from being able to perform his duties. And, the court understands plaintiff's belief that he was ill-served by the Army at the time of his discharge. However, the court's ability to entertain lawsuits–including plaintiff's lawsuit–is constrained by the statute of limitations and the binding case law construing that statute.

In sum, plaintiff's claims accrued on the date of his discharge from the Army, which occurred more than six years before he filed his complaint in this court. Therefore, the court **GRANTS** defendant's motion to dismiss and **DISMISSES** plaintiff's complaint for lack of jurisdiction. The court also **GRANTS** plaintiff's application to proceed in forma pauperis. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge